198

VIRGIL LEE DARROUGH JR. *v.* STATE OF ARKANSAS

5681                                    478 S.W. 2d 50

Opinion delivered March 27, 1972

*Gibson Law Office,* for appellant.

*Ray Thornton,* Atty. Gen., by *James A. Neal,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Virgil Lee Darrough, Jr., was charged with the first degree murder of Ruben Davis by stabbing Davis to death with a pocket knife. On trial he was convicted of voluntary manslaughter, and was sentenced to serve seven years in the Department of Corrections. From the judgment so entered, appellant brings this appeal. The sufficiency of the evidence to support the conviction is not here questioned, but four errors are asserted to have occurred during the trial of the case. We proceed to a discussion of each in the order listed by the appellant.

It is first contended that the court erred in permitting the prosecution to continuously lead the state's

witnesses. The prosecuting attorney asked Victor Doll, a state's witness, if he heard any words of the argument between the appellant and the deceased. The witness answered, "No—yeah, I heard some, but I can't recall what they were". He was then asked if he could recall any of the vulgar words and answered "No, I can't recall, it has been quite awhile ago". Perhaps it could be said that the word "vulgar" suggested an answer, but at any rate, the reply of the witness could not have damaged appellant. The second objection to an alleged leading question occurred during the re-re-direct examination of the same witness. Counsel for appellant had already inquired of Doll and had elicited the opinion of the witness to the effect that if Davis had not attempted to close the door, preventing Darrough from leaving, appellant would have departed peacefully, and the killing would not have occurred. Thereafter, the prosecuting attorney asked "Now when he closed the door you say it hit him, he could have gone outside as well as inside, couldn't he?" The witness did not respond to the question, and, even if it could be said that an answer to this question would have been prejudicial, there can be no merit in the contention since there was no reply.

It is next asserted that the court committed error in admitting into evidence testimony of statements obtained from the accused in violation of his constitutional privilege against self-incrimination. Officer Bobbie G. DeJarnette, Chief of Police of Star City, testified that he heard there had been a stabbing, and after talking to some witnesses, started out looking for appellant. Darrough was located at the front of the courthouse, and was with his father, who had brought him to the courthouse. The evidence reflects that Darrough voluntarily handed DeJarnette a pocket knife and told the officer what had happened. The *Miranda*[1] warnings were not given, but DeJarnette stated that he did not ask Darrough any questions, and that the latter, on his own initiative, conveyed the information. It definitely appears that any statements made by appellant, who,

[1]*Miranda* v. *Arizona*, 384 US 436.

as stated, was in the company of his father, were entirely voluntary. Be that as it may, no statement was introduced, and with the exception of identifying the weapon, DeJarnette did not testify about what Darrough said to him. There being no testimony of what was said, there could be no prejudice, and we find no merit in this contention.

It is next asserted that the court erred in refusing to permit Victor Doll to answer a question on cross-examination, the question being "If the deceased Davis had a let him alone it wouldn't a nothing happened would it?" The state objected to this question and the objection was sustained by the court. There was no error. The answer to the question called for a conclusion, and we held such evidence to be incompetent in *Blanton v. State*, 249 Ark. October 12, 1970, 458 S.W. 2d 373.

Finally it is urged that the court erred in permitting the introduction of appellant's pocket knife in evidence. Appellant says that the introduction of this weapon was designed to inflame the minds of the jurors and that it did prejudice and influence them against him. We do not agree. Officer DeJarnette was very fair in his testimony, and stated that the knife was just an ordinary pocket knife, and that the length was within the permitted use of an individual; "It's legal to carry it". The knife was very pertinent to the state's case as Officer DeJarnette pointed out in his testimony. The record reveals the following:

"Q.   I ask you if you noticed anything unusual about the opening or is anything in that knife?

A.   Yes sir, there is.

Q.   What is it?

A.   It looks like a match stick.

Q.   Can you see it in there?

A. Yes sir.

O. Do you know what purpose it serves in that knife?

A. Yes sir. It usually serves the purpose, it is kinda like a switch blade where you can just take your thumb and switch it open.

Q. Then it does not completely close when the stick in there?

A. No sir, it does not.

Q. Where you do not have to use the bevel there you can pull it with your hand?

A. Yes sir.

Q. It makes it quickly opened then?

A. Yes sir."

While testifying, appellant admitted that he had placed a match stem in the groove of the handle where the blade rested in order to "hold that blade up". From the record:

"Q. What do you want to hold the blade up for?

A. See, that makes it so you can get it out a little faster.

A. Yes sir."

We find no merit in appellant's argument.

Finding no reversible error in the proceedings, it follows that the judgment should be, and hereby is, affirmed.

It is so ordered.